**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE SEED SCHOOL OF MARYLAND, INC. | ) | Case No.: 1:26-cv-2955 |
| | ) | |
| Serve: | ) | |
| | ) | |
| Registered Agent | ) | |
| CSC-Lawyers Incorporating | ) | |
| Service Company | ) | |
| 7 St. Paul Street, Suite 820 | ) | |
| Baltimore, Maryland 21202 | ) | |
| | ) | |
| MOTHER DOE, Individually, and as Mother | ) | |
| And Next Friend of Her Child, STUDENT | ) | |
| DOE | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| David C.M. Ledyard, Esq. | ) | |
| Ledyard Law, LLC | ) | |
| 36 South Charles Street, Suite 901 | ) | |
| Baltimore, Maryland 21201 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Cincinnati Insurance Company ("Cincinnati"), by counsel, hereby files its Complaint for Declaratory Judgment and states as follows:

1.     Cincinnati is a corporation organized under the laws of Ohio with its principal place of business in Ohio.

2.      Upon information and belief, The Seed Foundation of Maryland, Inc. (the "School") is incorporated, and maintains its principal place, in Maryland.

3.      Upon information and belief, Mother Doe, Individually, and as Mother and Next Friend of Her Child ("Mother Doe"), Student Doe ("Student Doe") is a resident of Maryland.

4.      The amount in controversy exceeds $75,000.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the alleged events giving rise to this dispute occurred in this District.

7.      Pursuant to 28 U.S.C. § 2201, Cincinnati seeks a declaration of the parties' rights and obligations under the liability insurance contracts at issue in this proceeding.

8.      This insurance coverage dispute arises out of an underlying lawsuit filed by Mother Doe against the School, which is captioned *Mother Doe, Individually, and as Mother and Next Friend of Her Child, Student Doe.*, Case No. 24-C-23-005229, and pending in the Circuit Court for Baltimore City, Maryland (the "Underlying Lawsuit").  The Amended Complaint filed in the Underlying Lawsuit is incorporated herein and is attached hereto as Exhibit 1.

9.      In the Underlying Lawsuit, Mother Doe seeks damages arising from, among other things, alleged abuse, harassment, and bullying of Student Doe by students and teachers while attending and residing at the School.

10.     The Amended Complaint alleges that the School failed to help and protect Student Doe from bullying and harassment by other students, pressuring her into allegedly harmful decisions, making educational and administrative decisions adverse to Plaintiff's interests, and generally failing to provide a safe and appropriate environment.

11.     Specifically, the Amended Complaint alleges, among other things, that:

- In December 2021, Student Doe was physically attacked by three fellow students, notwithstanding an advance warning from Mother Doe, and that Student Doe suffers from a permanent head injury as a result.

- In August 2022, Student Doe was subjected to abuse, harassment and bullying, including a physical assault without justification.

12. The Amended Complaint alleges that the School either took no action, or took insufficient action, to help and protect Student Doe during her time at the School.

13. The Amended Complaint asserts claims for Negligence; Gross Negligence; Violation of Rights secured under Article 24 of the Maryland Declaration of Rights; Breach of Fiduciary Duty; Violation of Maryland Constitutional Article VIII, Sec. 1; Intentional Infliction of Emotional Distress; and Invasion of Privacy.

14. Cincinnati issued Educational Institutions policy no. SIP 001 59 85 to named insured The Seed School of Maryland, Inc. for the policy period of July 1, 2020 through July 1, 2021 (the "Policy"), which was annually renewed through July 1, 2024 (the "Policies").[1] The Policies are attached hereto as Exhibits 2-5 and are incorporated herein.

15. The commercial general liability ("CGL") coverage part of the 2020-2021 Policy affords limits of $1 million each occurrence and $2 million in the aggregate.

16. By endorsement, effective April 27, 2021, the CGL coverage part of the 2020-2021 Policy affords limits of $1 million each occurrence and $3 million in the aggregate.

17. The CGL coverage part of the 2021-2023 Policies affords limits of $1 million each occurrence and $3 million in the aggregate.

---

[1] The 2020-2021 Policy will individually be referred to as the "2020 Policy." The 2021-2022 Policy will individually be referred to as the "2021 Policy." The 2022-2023 Policy will be individually referred to as the "2022 Policy." The 2023-2024 Policy will be individually referred to as the "2023 Policy."

18.     The CGL coverage part of the Policies uses basic form GA 101 12 04, which provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

*     *     *

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period, and

        (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    **c.** "Bodily injury" or "property damage" which:

        **(1)** Occurs during the "coverage term"; and

        **(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

4

includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

\* \* \*

## 2. Exclusions

This insurance does not apply to:

### a. Expected or Intended Injury

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

## COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.   We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

\* \* \*

b. This insurance applies to "personal and advertising injury" only if:

(1) The "personal and advertising injury" is caused by an offense arising out of your business;

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

\* \* \*

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

6

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Exs. 2-4, Policy Form GA 101 12 04.[2]

19.    The CGL coverage part of the Policies contains the following Exclusion - Designated Professional Services endorsement:

**EXCLUSION - DESIGNATED PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

---

[2]    The 2023 Policy uses policy form CG 00 01 04 13, which is not materially different for purposes of this case from policy form GA 101 10 12 04.

## SCHEDULE

### Description of Professional Services

**1.**   SCHOOL ADMINISTRATORS

**2.**   EDUCATORS LEGAL LIABLITY

**3.**   TEACHERS

*   *   *

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

Exs. 2-5, Policy Form CG 21 16 04 13.

20.   The CGL coverage part contains the Educational Institutions Commercial General Liability Endorsement, which provides, in pertinent part, as follows:

**13. Bodily Injury Redefined**

**Section V – Definitions, 4.** "Bodily injury" is replaced by the following:

**4.**   "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish, mental injury, including care, loss of services or death resulting from any of these at any time.

*See, e.g.*, Ex. 3, Policy Form GA 252 09 17.

21.    The CGL coverage part of the 2022 Policy contains the following Abuse or Molestation Exclusion endorsement:

### ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.  The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2.  The negligent:

    a.  Employment;

    b.  Investigation;

    c.  Supervision;

    d.  Reporting to the proper authorities, or failure to so report; or

    e.  Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

Ex. 4, Policy Form CG 21 46 07 98.

22.    The Umbrella coverage part of the 2020-2021 Policy affords limits of $5 million each occurrence, and $5 million in the aggregate.

23.    The Umbrella coverage part of the 2021-2023 Policies provides limits of $10,000,000 each occurrence and in the aggregate limit.

9

24.     The Umbrella coverage part of the Policies uses basic form US 101 UM 12 04,

which provides, in pertinent part, as follows:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM**

**SECTION I – COVERAGE**

**A.   Insuring Agreement**

    **1.**   We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

        **a**.   Which is in excess of the "underlying insurance"; or

        **b**.   Which is either excluded or not insured by "underlying insurance".

    **2.**   This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

        **a.**   The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **b.**   The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; and

        **c.**   The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations;

*   *   *

**B.   Exclusions**

This insurance does not apply to:

*   *   *

**13.   Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or

10

criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or  expected.

However, this exclusion does not apply  to:

**a.** "Bodily  injury"  resulting  from  the  use  of  reasonable force to protect persons or property; or

**b.** "Bodily injury" or "property damage" resulting from the use of reasonable force  to prevent  or  eliminate danger in the operation of "autos" or watercraft.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

**16.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially  the  same general harmful conditions, that results in "bodily injury" or "property damage"; or

**b.** An offense that results in "personal and advertising injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be  deemed to arise from one "occurrence" regardless of:

**(1)** The frequency of repetition;

**(2)** The number or kind of media used; or

**(3)**    The number of claimants.

17. "Personal  and  advertising  injury"  means  injury,  including "bodily  injury",  arising  out  of  one  or  more  of  the  following offenses:

**a.**    False arrest, detention or imprisonment;

**b.**    Malicious prosecution;

11

**c.**   Abuse of process;

**d.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**e**.   Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a  person  or organization or disparages a  person's or organization's goods, products or services;

**f.**   Oral or written publication, in any manner,  of material that violates a person's right of privacy;

**g.**   The use of another's advertising idea in your "advertisement";

**h**.   Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**i.**   Discrimination, unless insurance  coverage therefor is prohibited by law or statute.

Exs. 2-4, Policy Form US 101 UM 12 04.[3]

25.    The Umbrella coverage part of the 2020 Policy contains the Educational Institutions Professional Liability Endorsement, which provides, in pertinent part, as follows:

**I.  Section I – Coverage A. Insuring Agreement** is modified to add the following:

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance" because of "professional liability" to which this Coverage Part applies and which occurs during the policy period and is caused by an "occurrence".

The terms, definitions, conditions, limitations and exclusions of the "underlying insurance" covering "professional liability" as specified in the Schedule of Underlying Insurance are made a part of this Coverage Part except for any term, definition or

---

[3]    The 2023 Policy uses policy form US 101 09 20, which is not materially different from US 101 UM 12 04 for purposes of this action.

condition relating to any duty to investigate or defend, the limits of insurance, payment of expenses, premium, cancellation, other insurance or our right to recover payments, in which case the provisions of this Coverage Part apply, including any renewal agreement or any exclusion or limitation in this Coverage Part applicable to "professional liability".

**II. SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

Any liability or damages arising from "professional liability", including but not limited to "bodily injury", "personal and advertising injury" or "property damage".

However, this exclusion will not apply if coverage for "professional liability" is provided by valid and collectible "underlying insurance", but only for such hazards for which coverage is afforded by such "underlying insurance".

\*     \*     \*

**V. SECTION V - DEFINITIONS** is modified as follows:

**A.** The following definitions are added:

    **1.** "Covered professional services" means:

        **a.** Educational counseling services; or

        **b.** Professional nursing, emergency medical technician, paramedics, psychological or psychometric counseling, athletic training, or speech, hearing, occupational or physical therapy service, treatment or advice, provided or failed to be provided by your "employee" or your "volunteer worker" to your "employees" or students.

    **2.** "Professional liability" means injury arising from the rendering or failure to render:

        **a.** "Covered professional services"; or

        **b.** The professional services described in the Schedule of this endorsement.

13

Ex. 2, Policy Form US 4099 01 16.

26.     The Umbrella coverage part of the 2021 Policy contains the Exclusion of Designated Professional Services endorsement, which provides, in pertinent part, as follows:

### EXCLUSION OF DESIGNATED PROFESSIONAL SERVICES

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph 1.) is modified to add the following:

This insurance does not apply to:

Any liability due to the rendering of or failure to render any professional service shown in the Schedule.

### SCHEDULE

**1.   SCHOOL ADMINISTRATORS**

**2.   EDUCATORS  LEGAL LIABILITY**

**3.   TEACHING**

Ex. 3, Policy Form UA 302 12 04.

27.     The Umbrella coverage part of the 2022-2023 Policies contains the Exclusion of Designated Professional Services endorsement, which provides, in pertinent part, as follows:

### EXCLUSION OF DESIGNATED PROFESSIONAL SERVICES

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph 1.) is modified to add the following:

This insurance does not apply to:

Any liability due to the rendering of or failure to render any professional service shown in the Schedule.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury", "property damage" or "personal and advertising injury", involved the rendering of or the failure to render the professional service(s) listed in the Schedule to others.

1. **SCHOOL ADMINISTRATORS**

2. **EDUCATORS  LEGAL LIABILITY**

3. **TEACHING**

Ex. 4-5, Policy UA 302 09 17.

28.    The Umbrella coverage part of the 2022 Policy contains the following Abuse or Molestation Exclusion endorsement:

**ABUSE OR MOLESTATION EXCLUSION**

\*    \*    \*

**SECTION I – COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part – Claims-Made only: Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability arising out of:

**a.** The actual or alleged abuse or molestation of any person while in the care, custody or control of any insured or any person or institution designated by an insured; or

**b.** The negligent:

**(1)** Employment;

**(2)** Investigation;

**(3)** Supervision;

**(4)** Reporting to the proper authorities, or failure to so report; or

**(5)** Retention,

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **a.** above.

Ex. 4, Policy Form US 370 12 04.

29.     Cincinnati is providing a defense to the School in the Underlying Lawsuit pursuant to a full and complete reservation of rights.

## CLAIM FOR DECLARATORY RELIEF

30.     Cincinnati incorporates and re-alleges herein by reference the allegations set forth in Paragraphs 1 through 29 above.

31.     Cincinnati owes no duty to defend or indemnify the School under the Policies for the claims and allegations asserted in the Underlying Lawsuit.

36.     The insuring agreements of the CGL and Umbrella coverage parts of the Policies afford coverage for amounts an "insured" becomes legally obligated to pay as damages for "bodily injury" taking place during the policy period caused by an "occurrence," which is defined as an "accident."

36.     The Underlying Lawsuit alleges that Student Doe was repeatedly harassed, abused, and bullied during her time at the School by both students and teachers, which does not satisfy the "occurrence" requirement of the insuring agreements of the CGL and Umbrella coverage parts of the Policies.

37.     The Underlying Lawsuit seeks damages arising from allegedly repeated harassment, abuse, and bullying of Student Doe during her time at the School, which is excluded from coverage by the "expected or intended" exclusions set forth in the CGL and Umbrella coverage parts of the Policies.

38.     The Underlying Lawsuit seeks damages arising from allegedly repeated harassment, abuse, and bullying of Student Doe, and the failure to help and protect Student Doe from the same, which is excluded from coverage by the Exclusion for Designated Professional Service endorsements set forth in the CGL and Umbrella coverage parts of the Policies.

39.     The Underlying Lawsuit seeks damages arising from allegedly repeated harassment, abuse, and bullying of Student Doe during her time at the School, which is excluded by the Abuse or Molestation Exclusion endorsement set forth in the 2022 Policy.

40.     An actual controversy exists as to the existence and scope of liability insurance coverage afforded under the Policies for the claims and allegations asserted against the School in the Underlying Lawsuits.

41.     Cincinnati is entitled to a declaration that coverage is barred under the Policies for the claims and allegations asserted against the School in the Underlying Lawsuit such that Cincinnati owes no duty to defend and/or indemnify the School.

WHEREFORE, Plaintiff Cincinnati Insurance Company respectfully prays for the following relief:

a.      That this Court declare that The Cincinnati Insurance Company owes no duty to defend the School in connection with the Underlying Lawsuit.

b.      That this Court declare that The Cincinnati Insurance Company owes no duty to indemnify the School in connection with the Underlying Lawsuit.

c.      That this Court grant such other relief as may be warranted, just, necessary and proper under the circumstances.

Dated:   July 29, 2026                           Respectfully submitted,

By: /s/ *Thomas S. Garrett*
Thomas S. Garrett (Md. Fed Bar No. 31237)
Alexander B. Michev
Harman Claytor Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 – Fax
tgarrett@hccw.com
amichev@hccw.com

***Attorneys for Plaintiff,***
***The Cincinnati Insurance Company***

18